UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACQUELINE NAPIER,                    )
  13004 Vicar Woods Lane              )
  Bowie, MD 20720,                    )
                                      )
          Plaintiff,                  )
                                      )
      v.                              )          Civ. Action No.
                                      )
CARLOS DEL TORO,                      )
  Secretary of the Navy,              )
  1000 Navy Pentagon                  )
  Washington, DC 20350-1200,          )
                                      )
          Defendant.                  )
_____   )

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

1)      Jacqueline Napier, an African American female, was a member of the Senior

Executive Service ("SES") and served in the Office of the Assistant Secretary of the Navy, in the

position of Deputy Director, Financial Operations ("FMO"), Financial Management and

Comptroller ("FM&C") from April of 2017 until March of 2019, when she was removed from the

SES, and reassigned to a lower level, non-supervisory position with significantly diminished

responsibilities and opportunities for professional exposure and advancement because of her race,

sex, or sex plus her race.

2)      Ms. Napier was selected by Karen Fenstermacher, the former Deputy Assistant

Secretary of the Navy for FMO, FM&C, and Joseph Marshall, the former Principal Deputy

Assistant Secretary of the Navy, FM&C, after a rigorous competitive process that culminated in

interviews before a four-member panel whose members included both Ms. Fenstermacher and

Joseph Marshall.  Ms. Napier was the panel's unanimous choice and, before selecting her, Ms. Fenstermacher contacted all six of Ms. Napier's references, each of whom provided excellent references for Ms. Napier and confirmed that she was the best choice.

3)      Upon her selection, Ms. Napier became a direct report to Ms. Fenstermacher, who closely monitored Ms. Napier's performance and rated Ms. Napier "Exceeds Fully Successful," the second highest rating, at the conclusion of Fiscal Year 2017.  Given the demands of being new to the SES at a different agency and the Navy's rigorous expectations of its SES employees, receiving a higher rating was virtually impossible for Ms. Napier.

4)      Before becoming Deputy Director, FMO, FM&C for the US Navy, Ms. Napier was the Deputy Director of  Financial Operations for the US Coast Guard ("Coast Guard").   During that time, Thomas Harker worked in a subordinate office to Ms. Napier's organization.  Ms. Napier routinely directed and reviewed the work performed by Mr. Harker's team and deemed it deficient in important respects.

5)      In or around January of 2018, nearly nine months after Ms. Napier arrived at the Navy, Mr. Harker joined the Navy as Assistant Secretary of the Navy for FM&C and became Ms. Napier's third line supervisor.  Mr. Harker served in this position when the events underlying this Complaint occurred.  Later, Mr. Harker served as Acting Secretary of the Navy.  Six months later, in or around July of 2018 while he was Assistant Secretary of the Navy, Mr. Harker began circulating unsubstantiated, vague, and pretextual allegations that Ms. Napier was "incompetent," airing them not only in private conversation with Ms. Fenstermacher and Mr. Marshall but in public as well.

6)      Although Ms. Fenstermacher was firmly of the belief that Ms. Napier again deserved to be rated at the Exceeds Fully Successful level for Fiscal Year 2018, she was advised

that her rating needed to incorporate Mr. Harker's comments about Ms. Napier's performance. Accordingly, she rated Ms. Napier at the "Successful" level, even though her own rating of Ms. Napier would have been higher.

7)     On August 30, 2018, Ms. Fenstermacher was informed that while Mr. Harker was at a Navy conference the previous month, he appeared to be drunk at the bar and had loudly and publicly complained that Ms. Napier was incompetent.  Ms. Fenstermacher was so concerned that she called a colleague, who confirmed that he had also heard about Mr. Harker's comments and believed many other people had too. Alarmed, Ms. Fenstermacher called Mr. Marshall on August 31, 2018, to relay her understanding of the incident.  The following business day, Mr. Marshall advised Ms. Fenstermacher that she was going to be removed from her position and relieved of substantive duties until the HR paperwork could be completed.

8)     In the meantime, Mr. Harker selected Ms. Alaleh Jenkins (a female who self identifies as of Middle Eastern race,) to replace Ms. Fenstermacher.  The formal HR paperwork for Ms. Fenstermacher's removal from her position and her replacement by Ms. Jenkins was completed in January of 2019.

9)     Ms. Jenkins was beholden to Mr. Harker for a permanent appointment to replace Ms. Fenstermacher and was highly susceptible to the pretextual criticism of Ms. Napier.  On March 8, 2019, without any legitimate basis, Ms. Jenkins removed Ms. Napier from the SES and demoted her to GS-15, and reassigned Ms. Napier to a non-supervisory, significantly less desirable position. In short order, Ms. Jenkins selected Gregory Koval (Caucasian male), who was significantly less qualified than Ms. Napier to replace her.

10)     This case seeks redress for defendant's discrimination toward Ms. Napier because of her race, sex, or sex plus her race.  It arises under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. § 2000e-2), and by way of relief seeks declaratory, injunctive, and equitable relief; Ms. Napier's restoration to the Senior Executive Service and reassignment to her former position as Deputy Director in  FMO, FM&C, or to an equivalent position; lost SES Performance Bonuses; record correction; compensatory damages; and an award of attorneys' fees and costs that were incurred in the pursuit of this action and the administrative proceedings that led up to it.

## **PARTIES, JURISDICTION, AND VENUE**

11)     Jacqueline Napier is an African American female and served as the Deputy Director, FMO, FM&C, in the Office of the Assistant Secretary of the Navy from April of 2017 until March of 2019 when she was removed from that position and the Senior Executive Service because of her race, sex, or sex plus her race.  Ms. Napier resides at the address recited in the caption of this Complaint.

12)     Defendant Carlos Del Toro is the Secretary of the Navy ("the Navy") and is sued in his official capacity only.  The Navy is in the Executive Branch of the federal government.  The primary mission of the Navy is to protect the United States by the effective prosecution of war at sea. It is one of the military departments that are components of the U.S. Department of Defense.

13)     Jurisdiction of this Court is based upon 28 U.S.C. §1332; and 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §2000e-2, 3, 5(c)).  Venue lies here pursuant to 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §2000e-5(f)(3)), because the discriminatory actions of defendant at issue occurred in this judicial district where plaintiff is and would have been employed but for defendant's unlawful actions.

## STATEMENT OF THE CASE

### Background

14)     Until the unlawful employment actions that comprise the subject matter of this suit took place, Ms. Napier served with the Navy in the capacity of Deputy Director, FMO, FM&C. The functions of FM&C are to direct and manage the financial activities of the Navy including, but not limited to, overseeing the management of the Navy's annual budget; providing independent financial and budgetary advice and analysis to components of the Navy; providing recommendations to the senior leadership of the Navy about the allocation of Navy assets; developing a world-class financial management work force for the Navy; and acting as steward of the Navy's financial resources.

15)     The Deputy Director, FMO, FM&C is located within the Office of the Assistant Secretary of the Navy.   The incumbent in the Deputy Director, FMO, FM&C position is responsible for the Navy's financial and accounting activities and operations; its inventory and property accounting; and the Navy's reports and disbursements of funds throughout the Navy and Marine Corps.  The Deputy Director, FMO, FM&C serves as the Navy's  chief accounting officer and provides advice and assistance to financial management activities on all matters throughout the Navy.

16)     Ms. Napier was selected for the position of Deputy Director, FMO, FM&C, in April of 2017.  Ms. Napier's portfolio in that position was exceptionally broad and included serving as the key management official responsible for day-to-day operations of FM&C, including its regional offices.  Upon her selection, Ms. Napier became a member of the career Senior Executive Service ("SES"), and was the only African American SES within FMO, FM&C.  During this time period there were approximately twenty members of the SES within FMO, FM&C.

5

**Ms. Napier's Selection for the Deputy Director Position**

17)     Competition for the position of the Navy's Deputy Director, FMO, FM&C, Ms. Napier's former position, opened with the posting of a Vacancy Announcement on June 16, 2016.

18)     The Vacancy Announcement identified the major duties of the Deputy Director, FMO, FM&C as overseeing the Operations Management Division including its Acquisition Strategy and Contract Management, Budget and Resources and Program Analysis; procurement activities and contract performance; production and publication of the Navy's annual financial statements and report; and appraisals and analysis of accounting information for top-level Navy military and civilian personnel.

19)     To qualify for consideration of the Deputy Director vacancy, among other matters, candidates had to hold a degree in Accounting or a related field or have equivalent experience; have knowledge of many related subjects, such as economics, statistics, accounting and financial reporting systems; and have knowledge of accounting principles and theories including Generally Accepted Account Principles, also known as GAAP.  Demonstrated leadership skills were also required, and all candidates either had to hold or be eligible for a security clearance at or above Top Secret.

20)     Ms. Napier was eminently well-qualified for the Deputy Director position and not only met but exceeded the requirements specified in the Vacancy Announcement for the position. Ms. Napier is a Certified Public Accountant and had served in senior leadership positions in components of the Department of Homeland Security.  Ms. Napier was serving in an acting SES position as Deputy Chief Financial Officer when she applied for the Deputy Director, FMO, FM&C, position and had served as the acting Director, an SES position, and permanent Deputy Director of Financial Operations for the Coast Guard.   Ms. Napier was in the Deputy Director of

Financial Operations for the Coast Guard position from June of 2011 through April 2017 and, among other matters, directed and oversaw the management of more than half of the asset portfolio of the Department of Homeland Security; various Coast Guard enterprise business operations with a workforce of civilian, military and contract support personnel; and the Coast Guard's Financial Reporting/Property Accountability, Policy, Financial Systems, Audit Remediation, Internal Controls and oversight of the annual financial statement audits.  During her tenure with the Coast Guard, Ms. Napier also served as the acting Deputy Chief Financial Officer of Customs and Border Protection, which is also a component of DHS, and was an acting member of the SES.

21)     Applicants for the Deputy Director position were carefully screened.  Only four candidates were referred to the four person interview panel that included Ms. Fenstermacher, who was then the Deputy Assistant Secretary for Financial Operations, and Mr. Marshall, who at the time was the Principal Deputy Assistant Secretary of the Navy.

22)     Ms. Napier was the panel's unanimous choice for the Deputy Director position subject only to the endorsement of her references and verification of her security clearance.

23)     Ms. Fenstermacher was responsible for contacting Ms. Napier's references.  All six recommended Ms. Napier without reservation.  One of those highly favorable references came from Ms. Napier's prior employer, the Coast Guard.

24)     Ms. Napier was selected for the Deputy Director position and cleared the SES approval process on January 30, 2017, and was brought on board on April 30, 2017.

**Ms. Napier's Performance Under Ms. Fenstermacher In Fiscal Year 2017**

25)     Upon her selection, Ms. Napier became a direct report to Ms. Fenstermacher.

26)     Ms. Fenstermacher was extraordinary during her four years in the position of Deputy Assistant Secretary for Financial Operations.  She was consistently rated "Outstanding"

and received cash bonuses commensurate with those ratings.  Ms. Fenstermacher's overall "Outstanding" ratings were based on Critical Elements of her Executive Performance Agreement and individual ratings of "Outstanding" for her leadership, executive abilities, and management of subordinates.

27)     The President of the United States awarded Ms. Fenstermacher the Presidential Rank Award of Meritorious Executive in 2018, an honor reserved for members of the career SES who have served the federal government with distinction as strong executives over a period of years.  They are reserved for senior executives who inspire employees and earn the respect of their agencies' customers.

28)     Ms. Fenstermacher closely monitored Ms. Napier's performance as her Deputy and required that Ms. Napier's performance, including but not limited to her performance as an executive and senior expert official of the Navy in accounting and finance, be consistently at a top level.  Ms. Napier's successes in her first six months alone as Deputy Director, FMO, FM&C, included, among others, leading the teams that were preparing the Navy for its legislatively mandated FY 2018 full financial audit; directing and implementing the design of new business models to reconcile millions of the Navy's financial transactions; and remaining laser focused on reconciliation and valuation of the Navy's $370 billion asset portfolio.  Ms. Napier quickly achieved these accomplishments by immediately building productive relationships with her staff; instilling rigor in her organization and having her staff meet aggressive timelines; imparting her expert knowledge of finance and accounting to her subordinates; and developing strong relationships with the Office of the Under Secretary of Defense, Defense Finance and Accounting Service, and key executives across the Navy.

29)     Based upon these accomplishments and others, Ms. Fenstermacher rated Ms.
Napier "Exceeds Fully Successful," the second level from the top, in every individual category
and overall for FY 2017.

30)     Ratings at the Exceeds Fully Successful level are reserved for an SES executive
who "demonstrates a very high level of performance," is "a proven, highly effective leader who
builds trust and instills confidence in agency leadership, peers, and employees," and "consistently
exceeds established performance expectations, timelines, or targets."

31)     As the Navy's Deputy Director, FMO, FM&C, Ms. Napier occupied a position of
exceptional responsibility and complexity in a military department that set very high expectations
for its SES employees.  As a first-year member of the SES in the Navy's FM&C, Ms. Napier
achieved a level of excellence in her performance that for all intents and purposes was as high as
Ms. Fenstermacher could and did expect of her.

**Ms. Napier's Performance Under Ms. Fenstermacher In Fiscal Year 2018**

32)     Ms. Napier's continued her excellent performance in FY 2018.  Among other
significant accomplishments, Ms. Napier led and designed business transformation and process
improvements for the Navy's critical, high priority operations and financial reporting; systems of
accounting; alternative valuation methodologies for the property and inventory portfolio. All of
this work was of particular interest to the Under Secretary of the Navy. She also engaged internal
and external Navy and Department of Defense stakeholders; defined key controls for the internal
control program; and directed operations for the independent audit of the Navy's financial
statements to reduce prior years' deficiencies.

33)     No later than July of 2018, after monitoring Ms. Napier's performance closely for
the first ten months of FY 2018, Ms. Fenstermacher had begun assessing Ms. Napier's

performance for that Fiscal Year and concluded that it was at the "Exceeds Fully Successful" level once again.  Barring a decline in Ms. Napier's performance between then and the end of FY 2018 on September 30, 2018, which never occurred, Ms. Fenstermacher was going to rate Ms. Napier's performance for FY 2018 at the Exceeds Fully Successful level.

34)     Yet, by the summer of 2018, Mr. Harker had become the Assistant Secretary of the Navy, Financial Management and Comptroller and hence superior in position not only to Ms. Napier but to Ms. Fenstermacher as well.  At the time, Mr. Marshall was Principal Deputy Assistant Secretary of the Navy, FM&C and also in a superior position to both women.

35)     In July of 2018, Ms. Napier represented the Navy on a panel at an important government-wide professional development conference concerning financial management.  After Ms. Napier returned from the conference, Mr. Marshall called Ms. Fenstermacher into his office and said that he heard from Mark Easton, the Deputy Chief Financial Officer in the Office of the Secretary of Defense, that Ms. Napier's performance as a panel member was deficient and that she allegedly had made a comment that was poorly received by other panel members.  Ms. Fenstermacher asked Mr. Marshall to be more specific but he could not.  Instead, Mr. Marshall directed Ms. Fenstermacher to speak with Mr. Easton directly.

36)     After meeting with Mr. Marshall, Ms. Fenstermacher went to Mr. Easton's office, told him about Mr. Marshall's comment, and asked Mr. Easton if he could explain the specific comment to her.  Mr. Easton was surprised by Ms. Fenstermacher's question and responded that he had no recollection of mentioning any such issue to Mr. Marshall. Mr. Easton was quite clear with Ms. Fenstermacher that Ms. Napier had not said anything at the conference that concerned him.

37)     Later in July of 2018, Mr. Marshall unexpectedly called Ms. Fenstermacher into a meeting with Mr. Harker who, as noted above, was then Assistant Secretary of the Navy, FM&C. As her third line supervisor at the time, Mr. Harker was not engaged in Ms. Napier's supervision at the Navy.  Nor did he have any basis for evaluating her performance at the Coast Guard.  In short, Mr. Harker had no personal knowledge about nor any other basis for evaluating Ms. Napier's performance at either agency.

38)     At the meeting with Ms. Fenstermacher and Mr. Marshall, Mr. Harker stated that Ms. Napier lacked the ability to do her job, which was decidedly untrue.  He did not provide any specifics about her work either at the Coast Guard or at the Navy.  The closest Mr. Harker came to identifying any shortcoming was his statement that Ms. Napier had an alliance with a woman at the Coast Guard who was her mentor and that this woman supposedly was hated.

39)     Mr. Harker's parting words at the meeting with Ms. Fenstermacher and Mr. Marshall were that "I wouldn't direct any action, but over to you guys to figure it out."

40)     Only two months were left in Fiscal Year 2018 at the time of Ms. Fenstermacher's meeting with Mr. Harker and Mr. Marshall.  As alleged earlier, by that time, Ms. Fenstermacher had already concluded that Ms. Napier deserved another rating at the "Exceeds Fully Successful" level unless there was a decline in her performance which did not occur.

41)     On August 30, 2018, when there was one month left in the FY 2018 performance year, Ms. Fenstermacher hosted a large meeting for Comptrollers to recognize financial management accomplishments throughout the year.   At the end of the event, one of the Comptrollers asked to talk with Ms. Fenstermacher in confidence.  The Comptroller shared an account of a disturbing incident that occurred during a conference in July that Ms. Napier and Mr. Harker had both attended.  The Comptroller and others had seen Mr. Harker sitting at a bar and,

while appearing to be intoxicated, "shooting his mouth off that he didn't like Jacklyn Napier and that she's incompetent." The Comptroller relayed that Mr. Harker "was getting loud" and those who overheard him were "shocked."

42)     Ms. Fenstermacher was alarmed to hear that Mr. Harker had been airing his alleged grievances about Ms. Napier in a public place, loudly, and while intoxicated. It had become clear to Ms. Fenstermacher that Mr. Harker's comments were untrue and unsubstantiated; that they were not based on any actual knowledge about Ms. Napier's performance, much less a fair assessment of it; and that Mr. Harker was intent on removing Ms. Napier from her position.

43)     On Friday August 31, 2018, disturbed by Mr. Harker's behavior, Ms. Fenstermacher approached a colleague in confidence to discuss it, only to learn that he already knew about the incident at the conference. That same day, she also called Mr. Marshall and relayed what she had learned about Mr. Harker's conduct at the bar.

44)     The following business day, September 4, 2018, Mr. Marshall directed Ms. Fenstermacher to meet in his office and advised Ms. Fenstermacher that she was being reassigned out of her position as Deputy Assistant Secretary of the Navy. When asked by Ms. Fenstermacher why this action was being taken, Mr. Marshall responded that he needed someone with a Certified Public Accountant (CPA) to do her job.

45)     Ms. Fenstermacher, who is not a CPA, reminded Mr. Marshall that she had been in her position for four years, that she had received the highest possible performance ratings each year, and that she had just received the Presidential Rank Award of Meritorious Executive. Mr. Marshall did not respond to Ms. Fenstermacher's statements or discuss her removal any further and ended the meeting.

46)     Ms. Fenstermacher's reassignment could not be accomplished until January of 2019, and she therefore remained responsible for Ms. Napier's performance appraisal for FY 2018. By the time Ms. Fenstermacher was ready to appraise Ms. Napier for FY 2018, she had been supervising Ms. Napier closely and had concluded that Ms. Napier deserved a rating of "Exceeds Fully Successful."

47)     However, in light of Mr. Harker's earlier negative comments, Ms. Fenstermacher sought HR advice about whether or how to incorporate them in finalizing Ms. Napier's rating.  Ms. Fenstermacher was advised that Ms. Napier's appraisal would have to reflect the views of Mr. Harker because he was in a very senior position at the Navy.

48)     Once again, Ms. Fenstermacher rated Ms. Napier's abilities in the Critical Elements Leading People and Results Driven in her Executive Performance Agreement at the "Exceeds Fully Successful" level.  Ms. Fenstermacher would have rated Ms. Napier at the "Exceeds Fully Successful" level in all of the Critical Elements and given her an overall rating of "Exceeds Fully Successful" in FY 2018, and placed Ms. Napier in the SES Performance Bonus pool for that fiscal year, but for the active interference of Mr. Harker and his baseless disparagement of Ms. Napier's performance.

### Replacement Of Ms. Fenstermacher With Ms. Jenkins

49)     Although the official paperwork for reassigning Ms. Fenstermacher was not completed until January of 2019, Mr. Harker and/or Mr. Marshall arranged for Alaleh Jenkins, a female who self-identifies as of Middle Eastern race, to assume all of Ms. Fenstermacher's duties as Deputy Assistant Secretary of the Navy for Financial Operations by January of 2019.  Ms. Jenkins was markedly less qualified for the Deputy Assistant Secretary position than Ms. Fenstermacher.  For example, Ms. Jenkins did not have any prior experience leading financial

management operations in a component military service. She had developed an insufficient audit strategy that could not be executed, and had not resolved many of the longstanding financial management, property, and audit deficiencies in her previous positions with the Office of the Secretary of Defense and Navy Office of the Chief Management Officer.

50)     During this period, Ms. Fenstermacher was sidelined and eventually reassigned to the position of Executive for Strategic Initiatives with a duty station in Mechanicsburg, Pennsylvania.   Ms. Fenstermacher's responsibilities were significantly less important and narrower in scope than they had been when she was Deputy Assistant Secretary of the Navy for Financial Operations, and she no longer had career opportunities or exposure to senior Navy officials as she had enjoyed previously.

### Ms. Jenkins' Removal Of Ms. Napier From The SES

51)     Ms. Jenkins was beholden to Mr. Harker and/or Mr. Marshall for her permanent appointment in the SES to replace Ms. Fenstermacher and was susceptible to and influenced by their pretextual criticisms of Ms. Napier.  Once Ms. Fenstermacher was pushed aside, Ms. Jenkins exhibited a highly negative, critical disposition toward Ms. Napier and her performance that was entirely unjustified.  For example, Ms. Jenkins faulted Ms. Napier for the time taken to discuss, and collaborate in development of an organization chart for Financial Operations.  In fact, Ms. Napier was not assigned to create a chart for the organization, but rather to assign all of its personnel to specific positions.  Ms. Jenkins also exaggerated and/or solicited negative comments from Ms. Napier's subordinates about her.   By contrast, Ms. Fenstermacher who, unlike Ms. Jenkins, supervised Ms. Napier closely had previously assessed Ms. Napier to be a strong leader and rated her accordingly in both FY2017 and FY2018.

52)     Ms. Jenkins repeatedly and without justification denied Ms. Napier leadership opportunities for FM&C, including in the strategic priorities for Financial Reporting, Fund Balance with Treasury, and Funds Receipt and Distribution/ Budgetary Reform.  Ms. Napier had been successfully performing these duties since her original appointment as Deputy Director, FMO, FM&C.

53)     Ms. Jenkins also criticized Ms. Napier heavily for supposedly failing to provide timely executive oversight of the Navy's Procure to Pay ("P2P") program, by which system functions are designed for the purchase and payment of goods and services.  In truth, Ms. Jenkins was delinquent in completing the P2P program from the summer of 2018, before she even replaced Ms. Fenstermacher.

54)     Based on these and other pretextual criticisms by Mr. Harker, Mr. Marshall, and/or Ms. Jenkins of Ms. Napier's performance, Ms. Jenkins removed Ms. Napier from her position as Deputy Director, FMO, FM&C, and from the SES effective March 17, 2019; reduced her in grade to a GS-15; and reassigned Ms. Napier to the non-supervisory position of Internal Control Manger in Naval Air Systems.  Reassignment to that position not only carried a demotion for Ms. Napier, it left her with a far more limited scope of duties, no subordinates, no opportunities for exposure to senior Navy leaders, and virtually no exposure to Defense Department executives; resulted in her reporting to a GS-15 rather to than a member of the SES; and eliminated Ms. Napier from consideration for SES Performance Bonuses going forward.  During the time period Ms. Napier served as Deputy Director, FMO, FM&C she was the only African American member of the SES within the FMO, FM&C.  During the relevant time period there were approximately twenty SES members within FMO, FM&C.

55)     Ms. Napier's reassignment under unfavorable circumstances also substantially reduced her opportunities for career advancement.  Shortly after her reassignment, Ms. Napier was under active consideration for an SES position as Deputy CFO by the Commander the Defense Information Systems Agency ("DISA").  On information and belief, Ms. Napier should have been selected for the position but for the fact that she was removed from her position of Deputy Director, FMO, FM&C, a prestigious, high level executive position in the Navy, under circumstances that were obviously negative.  When Ms. Fenstermacher was contacted by the Commander of the DISA, she tried to explain that Mr. Harker had tried to force her to demote Ms. Napier but that she would not, because Ms. Napier was a strong performer and an asset to FM&C.  Unfortunately, despite Ms. Fenstermacher's effort, DISA passed over Ms. Napier and hired another candidate as the Deputy CFO.

## Ms. Napier's Replacement

56)     Later in 2019, Ms. Jenkins filled Ms. Napier's former position with Gregory Koval, a Caucasian male.

57)     Mr. Koval had worked for the US Marine Corps as a GS-15, at a level well below Ms. Napier's  when Ms. Napier was Deputy Director, FMO, FM&C.  Mr. Koval was not only starkly less qualified for that position when Ms. Napier encumbered it, he was manifestly less qualified than Ms. Napier when she applied for the position.

58)     For example, Ms. Napier had served in two long acting SES assignments which were executive leadership positions before being selected as Deputy Director.  She was acting Director of Financial Operations at the Coast Guard and acting Deputy Chief Financial Officer at Customs and Border Protection. She was also a CPA.

16

59)    Mr. Koval, by contrast, had never served in the SES in either an acting or permanent capacity before being selected as Ms. Napier's successor and was not a CPA.  Mr. Koval's highest position was the one he occupied immediately before being selected, and it was a GS-15 financial manager with the U.S. Marine Corps, a component of the Navy.  The Marine Corps had a long trail of financial audits that documented numerous financial management deficiencies.  Mr. Koval and his co-workers were unable to resolve these issues until Ms. Napier provided direction and guidance to the Marine Corps to assist with their audit. Previously, Mr. Koval had worked as a contractor on Marine Corps audit readiness and internal controls and was assigned to remedy a series of failed audits there.  Even by the time Mr. Koval left the Marine Corps for FMC, it had not completed a successful audit for a decade if not more.  To date, the Coast Guard remains the only military service with not one, but eight successful audit opinions.  Ms. Napier was the Deputy Director of Financial Operations and the senior manager who provided leadership, direction, and oversight for five of those  successful audits of the Coast Guard prior to her appointment as Deputy Director, FMO, FM&C.

## EXHAUSTION OF ADMNISTRATIVE REMEDIES

60)    Ms. Napier timely initiated the informal administrative complaints process concerning the employment actions that are at issue in this case on March 11, 2019.  On May 29, 2019, Ms. Napier timely filed a formal administrative EEO complaint that was assigned No. 19-41421-02123.  In due course, the Navy conducted an investigation into Ms. Napier's formal EEO complaint and issued an incomplete Report of Investigation even though Ms. Napier's counsel requested that the Report of Investigation be corrected many times.  On December 18, 2019, Ms. Napier timely filed a request for a hearing with the Equal Employment Opportunity Commission. Initial proceedings before the EEOC were concluded with an Order on June 28, 2021, remanding

the complaint to the Navy.  Ms. Napier and her counsel received the Final Agency Decision adverse to Ms. Napier on September 3, 2021.  Ms. Napier timely initiated this suit within 90 days of her receipt of that Final Agency Decision.

61)     Through the foregoing actions and all others required of her by law and regulation, Ms. Napier timely exhausted the administrative remedies available to her to utilize the administrative EEO complaints processes over the employment actions that are at issue in this case and to initiate this action within the time prescribed by 42 U.S.C. §2000e-16(c).

## COUNT I

### (Race Discrimination – Removal From SES and Demotion to GS-15, Denial of SES Performance Bonuses and Reassignment to Undesirable GS-15 Position)

62)     Plaintiff repeats the allegations contained in paragraphs 1 through 61 above, as though fully set forth here.

63)     Ms. Napier is an African American female.

64)     Until the actions that gave rise to this Complaint, Ms. Napier was a career member of the Senior Executive Service, which encompasses positions that are classified above General Schedule (or GS positions) in great part because of the executive skills that are required of all incumbents.

65)     In her position as Deputy Director, FMO, FM&C, Ms. Napier was the key management official responsible for day-to-day operations of the Office of Financial Operations of the Office of the Assistant Secretary of the Navy (FM&C) and for providing direct support to the Deputy Assistant Secretary of the Navy, Financial Operations.

66)     On March 8, 2019, defendant removed Ms. Napier from the SES and demoted her to the lower grade of GS-15 as an Internal Control Manager on the pretextual grounds that she was not performing at the Fully Successful level.  This demotion and reassignment resulted in Ms.

Napier no longer having any subordinate staff or organizations that reported to her; placed her far lower in the organizational structure of the  Navy; relieved her of responsibility for the day-to-day operations of that office; left her with a vastly reduced scope of job duties and more limited opportunities for professional exposure and career advancement; and led to her being assigned and reporting to a Grade 15 General Schedule employee rather than a member of the SES.

67)     As opposed to the extraordinarily broad responsibilities and challenging job opportunities Ms. Napier enjoyed as Deputy Director, FMO, FM&C, her duties as an Internal Control Manager relate entirely to Naval Air Systems Command ("NAVAIR"), the mission of which is to provide support of naval aviation aircraft, weapons and systems, and is confined in scope to supporting resolution of one deficiency received by the Navy in Fiscal Year 2020 that related to its internal control program.  The Internal Control Manager position is located outside of Washington, D.C., where opportunities for Ms. Napier to interact with high level officials of the Navy and the Department of Defense are no longer available to her.

68)     As a result of defendant's pressure on Ms. Fenstermacher, Ms. Napier's rating for Fiscal Year 2018 was at the Fully Successful level rather than at the Exceeds Fully Successful level, which eliminated her from the Navy's SES Performance Bonus pool that would automatically have accompanied a rating at the Exceeds Fully Successful level.  From FY 2019 forward, defendant's unlawful removal of Ms. Napier from the SES made her ineligible for any SES Performance Bonus that she would have received for continued performance at or above the Exceeds Fully Successful level which were and will continue to be larger than ones that Ms. Napier became eligible for upon her reversion to GS-15.  Ms. Napier was also ineligible for career advancement in the SES and has suffered from lack of promotion opportunities to higher level SES positions.

69)     Defendant's selection of the GS-15 position to which Ms. Napier was involuntarily reassigned further and independently damaged her career materially significantly.  At the time of defendant's reassignment of Ms. Napier, there were one or more vacant supervisory GS-15 positions in FMO and other offices in the Navy and in Washington, D.C., that Ms. Napier was qualified to occupy, as well as on-going recruiting announcements for more desirable GS-15 positions than the one to which Ms. Napier was involuntarily reassigned.  That position was also materially less desirable and challenging than the position to which Ms. Napier had been assigned to since 2011 when she was selected as Deputy Director, FMO, FM&C in April of 2017, and did not offer the same or similar opportunities for professional exposure and career enhancement.

70)     After removing Ms. Napier from the position of Deputy Director, FMO, FM&C, defendant replaced her with Gregory Koval, who was manifestly less qualified for Ms. Napier's former position both when Ms. Napier encumbered that position and when she applied for it.

71)     Defendant took one or both of the foregoing tangible, adverse employment actions in order to discriminate against plaintiff because of her sex or her sex plus race and thereby violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2 (incorporated into 42 U.S.C. §2000e-16).

72)     Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life, and materially injured plaintiff's career.

**COUNT II**

**(Sex/Sex Plus Race Discrimination – Removal From SES and Demotion to GS-15, Denial of SES Performance Bonuses and Reassignment to Undesirable GS-15 Position)**

73)     Plaintiff repeats the allegations contained in paragraphs 1 through 72 above, as though fully set forth here.

74)     Ms. Napier is an African American female.

75)     Until the actions that gave rise to this Complaint, Ms. Napier was a career member of the Senior Executive Service, which encompasses positions that are classified above General Schedule (or GS positions) in great part because of the executive skills that are required of all incumbents.

76)     In her position as Deputy Director, FMO, FM&C, Ms. Napier was the key management official responsible for day-to-day operations of the Office of Financial Operations of the Office of the Assistant Secretary of the Navy (FM&C) and for providing direct support to the Deputy Assistant Secretary of the Navy, Financial Operations.

77)     On March 8, 2019, defendant removed Ms. Napier from the SES and demoted her to the lower grade of GS-15 as an Internal Control Manager on the pretextual grounds that she was not performing at the Fully Successful level.  This demotion and reassignment resulted in Ms. Napier no longer having any subordinate staff or organizations that reported to her; placed her far lower in the organizational structure of the  Navy; relieved her of responsibility for the day-to-day operations of that office; left her with a vastly reduced scope of job duties and more limited opportunities for professional exposure and career advancement; and led to her being assigned and reporting to a Grade 15 General Schedule employee rather than a member of the SES.

78)     As opposed to the extraordinarily broad responsibilities and challenging job opportunities Ms. Napier enjoyed as Deputy Director, FMO, FM&C, her duties as an Internal Control Manager relate entirely to Naval Air Systems Command ("NAVAIR"), the mission of which is to provide support of naval aviation aircraft, weapons and systems, and is confined in scope to supporting resolution of one deficiency received by the Navy in Fiscal Year 2020 that related to its internal control program.  The Internal Control Manager position is located outside of Washington, D.C., where opportunities for Ms. Napier to interact with high level officials of the Navy and the Department of Defense are no longer available to her.

79)     As a result of defendant's pressure on Ms. Fenstermacher, Ms. Napier's rating for Fiscal Year 2018 was at the Fully Successful level rather than at the Exceeds Fully Successful level, which eliminated her from the Navy's SES Performance Bonus pool that would automatically have accompanied a rating at the Exceeds Fully Successful level.  From FY 2019 forward, defendant's unlawful removal of Ms. Napier from the SES made her ineligible for any SES Performance Bonus that she would have received for continued performance at or above the Exceeds Fully Successful level which were and will continue to be larger than ones that Ms. Napier became eligible for upon her reversion to GS-15.  Ms. Napier was also ineligible for career advancement in the SES and has suffered from lack of promotion opportunities to higher level SES positions.

80)     Defendant's selection of the GS-15 position to which Ms. Napier was involuntarily reassigned further and independently damaged her career materially significantly.  At the time of defendant's reassignment of Ms. Napier, there were one or more vacant supervisory GS-15 positions in FMO and other offices in the Navy and in Washington, D.C., that Ms. Napier was qualified to occupy, as well as on-going recruiting announcements for more desirable GS-15

positions than the one to which Ms. Napier was involuntarily reassigned.  That position was also materially less desirable and challenging than the position to which Ms. Napier had been assigned to since 2011 when she was selected as Deputy Director, FMO, FM&C in April of 2017, and did not offer the same or similar opportunities for professional exposure and career enhancement.

81)    After removing Ms. Napier from the position of Deputy Director, FMO, FM&C, defendant replaced her with Gregory Koval, who was manifestly less qualified for Ms. Napier's former position both when Ms. Napier encumbered that position and when she applied for it.

82)    Defendant took one or both of the foregoing tangible, adverse employment actions in order to discriminate against plaintiff because of her sex or her sex plus her race and thereby violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2 (incorporated into 42 U.S.C. §2000e-16).

83)    Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life, and materially injured plaintiff's career.

## PRAYER FOR RELIEF

Wherefore, plaintiff Jacqueline Napier respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.    An Order declaring that defendant violated plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, in removing plaintiff from the Senior Executive Service and/or reassigning her to the GS-15 position as Internal Controls Manager and restraining and enjoining defendant from further violations.

B.    Reassignment of plaintiff to her former position as Deputy Director in FMO, FM&C, or to an equivalent position commensurate with plaintiff's background, experience, and

accomplishments.

      C.     Awards of lost SES Performance Bonuses.

      D.     Record correction expunging any documents in Ms. Napier's official personnel file reflecting her having been removed from the SES and reassigned to the GS-15 position of Internal Controls Manager.

      E.     Compensatory damages.

      H.     An award of the attorneys' fees and costs incurred in the prosecution of this action and in the administrative EEO complaints processes that preceded it.

      I.     Such other equitable relief as may be appropriate.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100

_____
Charlene Bofinger, Esq.
 D.C. Bar No. 368879

_____//s//_____
Molly E. Buie, Esq.
 D.C. Bar No. 483767
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200
Counsel for Plaintiff